IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MICHAEL M. NGRIME,** | ) | **CASE NO. 8:08CV23** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **PAPILLION MANOR, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 27.) Also pending is Defendant's Motion for Protective Order (Filing No. 41) and Plaintiff's Motion for an Order Denying Defendant's Motion for Protective Order (Filing No. 42). As set forth below, Defendant's Motion for Summary Judgment is granted and the other pending Motions are denied as moot.

## I. BACKGROUND

Plaintiff, Michael M. Ngrime ("Ngrime"), filed his Complaint in this matter on January 17, 2008. (Filing No. 1.) In his Complaint, Plaintiff alleges that Defendant, Papillion Manor, Inc. ("Papillion Manor"), discriminated against him because of his race in violation of Title VII of the Civil Rights Act, created a hostile work environment in violation of 42 U.S.C. § 1981, and retaliated against him by providing bad references after Plaintiff filed a complaint against Defendant with the Nebraska Equal Opportunity Commission ("NEOC"). (Filing No. 1 at CM/ECF p. 1.)

On July 17, 2008, Defendant filed a Motion for Summary Judgment along with a Brief and an Index of Evidence to support the Motion. (Filing Nos. 27, 28, and 29.) These filings only addressed Plaintiff's discrimination claim, so the court permitted the filing of a Supplemental Brief and Index of Evidence to address Plaintiff's other claims. (Filing Nos. 34, 35, 36 and 37.) After an extension, Plaintiff filed a Brief in Opposition to the

Defendant's Motion along with an Index of Evidence on November 17, 2008. (Filing Nos. 45 and 46.) Thereafter, Defendant replied by filing an additional Index of evidence and a Reply Brief in support of its Motion for Summary Judgment. (Filing Nos. 50 and 51.) Plaintiff responded by filing a supplemental Brief and Index. (Filing Nos. 52 and 53.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

The court has carefully reviewed the documents submitted by both parties. Defendant has submitted a statement of material facts and Plaintiff has responded to those facts. Further, both parties have submitted evidence authenticated by affidavit or sworn deposition testimony. In light of this, this matter is deemed fully submitted and the court adopts the following material facts.

## II. RELEVANT MATERIAL FACTS

Background

1. Ngrime is an African American resident of the State of Nebraska. (Filing No. 1 at CM/ECF p. 3.)

2. Papillion Manor is a corporation organized under the laws of the State of Nebraska with its principal place of business in Papillion, Nebraska. (*Id.*; Filing No. 9 at CM/ECF p. 2.)

3. Defendant employed Plaintiff as a nursing assistant from April 20, 2000, through December 29, 2005. (Filing No. 1 at CM/ECF p. 4; Filing No. 9 at CM/ECF p. 2.)

4. Defendant employed Mary Ann Moore ("Moore"), a Caucasian female, as a Director of Nursing ("DON") during Plaintiff's employment. (Filing No. 1 at CM/ECF p. 6; Filing No. 9 at CM/ECF p. 3.)

5. Defendant employed Rosalyn Burke ("Burke"), a Caucasian female, as an Administrator during Plaintiff's employment. (Filing No. 1 at CM/ECF p. 6; Filing No. 9 at CM/ECF p. 3.)

6. Defendant employed Robin Burns ("Burns"), a Caucasian female, as a nursing assistant during Plaintiff's employment. (Filing No. 1 at CM/ECF p. 5; Filing No. 9 at CM/ECF p. 3.)

7. Defendant employed David Creal ("Creal") as an Interim Administrator during Plaintiff's employment. (Filing No. 1 at CM/ECF p. 5; Filing No. 9 at CM/ECF p. 3.)

Plaintiff's Previous Harassment Claims

8. During his employment, Ngrime complained to Defendant that Burns and several other co-workers harassed him because of his race. (Filing No. 1 at CM/ECF pp. 12-13; Filing No. 50-4, Attach. 3 at CM/ECF p. 1.)

9. In February 2005, Creal investigated Plaintiff's harassment claims, determined that they were unsubstantiated, and that Plaintiff was simply unwilling "to

accept the fact that he had issues with his performance." (Filing No. 50-4, Attach. 3 at CM/ECF pp. 1-4.)

10. In March 2005, Burke also investigated Plaintiff's claims and determined that they were "unsubstantiated and without merit." (Filing No. 50-3, Attach. 2 at CM/ECF p. 1.)

Plaintiff's Termination

11. On December 29, 2005, Moore called Plaintiff and Burns into her office to discuss concerns that Plaintiff and Burns were not working as a team, yelling at each other in the hallways, badmouthing each other behind their backs, and providing poor resident care on the hall. (Filing No. 29-3, Attach. 2 at CM/ECF pp. 198-201; Filing No. 29-8, Attach. 7 at CM/ECF p. 14; Filing No. 50-3, Attach. 2 at CM/ECF pp. 2-4.)

12. Moore told Ngrime and Burns that they needed to work together as a team and improve the overall care that they provided. Moore also warned them that if they did not address her concerns they would both be looking for new jobs. (*Id*.)

13. After this conversation, Plaintiff went into a resident's room to make a bed. (Filing No. 29-3, Attach. 2 at CM/ECF p. 201.)

14. While Plaintiff was making the bed, a co-worker asked Plaintiff if he was working a double shift that day. (*Id*. at CM/ECF pp. 201-03.)

15. In response, and in front of a resident who was sitting in the room, Plaintiff stated that he was not working a double shift that day, but that he "went to talk to the big shots." When asked about what happened, Plaintiff responded, "well, you know what happens . . . you know Robin has been trying to get me out of here for a long time . . . [Robin] went and complained to the big shots . . . ." (*Id.*)

4

16. While Plaintiff was discussing Burns with his co-worker, Defendant's Administrator, Burke, overheard Plaintiff say "Robin . . . Robin" in a loud and angry tone. (Filing No. 50-5, Attach. 4 at CM/ECF pp. 4-5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 201-03.)

17. Burke came into the resident's room and told Plaintiff to follow her into Moore's office. (Filing No. 50-5, Attach. 4 at CM/ECF p. 5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 202-03.)

18. In Moore's office, and in the presence of Moore, Burke terminated Plaintiff for talking negatively about Burns in front of a resident. (Filing No. 50-5, Attach. 4 at CM/ECF p. 5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 202-04; Filing No. 29-8, Attach. 7 at CM/ECF p. 13; Filing No. 50-3, Attach. 2 at CM/ECF pp. 2-4.)

### III.   ANALYSIS

#### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* *Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

### B.  Plaintiff's Discrimination Claim

Plaintiff claims that he was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964. (Filing No. 1 at CM/ECF p. 2.) For the reasons stated below, Plaintiff's discrimination claim fails because Plaintiff has not presented sufficient evidence to rebut Defendant's legitimate, nondiscriminatory reason for Plaintiff's discharge.

To survive a motion for summary judgment, a plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. *Bearden v. Int'l Paper Co.,* 529 F.3d 828, 831 (8th Cir. 2008). Claims premised on indirect evidence are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Because Plaintiff offers no evidence of direct discrimination, the court will analyze his claims under the *McDonnell Douglas* framework.

Under this framework, Plaintiff bears the initial burden of proving a prima facie case of discrimination. *Id.* Accordingly, Plaintiff must establish that: (1) he is a member of a

6

protected group; (2) he was qualified for his position; (3) he was discharged; and (4) his discharge occurred in circumstances giving rise to an inference of discrimination. *Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005). If Plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for its employment decision. *Bearden,* 529 F.3d at 831. If the Defendant articulates a nondiscriminatory reason, the burden returns to the Plaintiff to show that the proffered reason is pretextual. *Id*. at 831-32 (citing *Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 548 (8th Cir. 2008)).

        1.     Prima Facie Case

Construing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has established the first three elements of his prima facie case. Thus, if Plaintiff can show circumstances that give rise to an inference of discrimination, he has satisfied the first stage of the *McDonnell Douglas* analysis.

At the prima facie stage, Plaintiff's burden to show circumstances that give rise to an inference of discrimination is "not onerous." *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)). Plaintiff need only demonstrate that other employees were "'involved in or accused of the same or similar conduct and were disciplined in different ways.'" *Wheeler,* 360 F.3d at 857 (quoting *Williams,* 14 F.3d at 1309); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005). Here, the material facts show that Plaintiff and Burns were both counseled about yelling at each other in the hallways and badmouthing each other behind their backs. (Filing No. 29-3, Attach. 2 at CM/ECF pp. 198-201; Filing No. 50-3, Attach. 2 at CM/ECF

pp. 2-4.) Arguably, Burns' conduct was similar to Plaintiff's, but Defendant imposed different sanctions. Although it is a close question, considering the low threshold at the prima-facie stage, the court finds that Plaintiff has established each requisite element of his prima facie case.

### 2. Pretext

Because Plaintiff has established a prima facie case, the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for Plaintiff's discharge. *See e.g.,* *Carrington v. City of Des Moines*, 481 F.3d 1046, 1053 (8th Cir. 2007). "The use of insults, a harsh tone, and sarcasm" can constitute a legitimate, non-discriminatory reason for termination. *Ogunleye v. Arizona*, 66 F. Supp. 2d 1104, 1109 (D. Ariz. 1999) (citing *Kahn v. U.S. Sec'y of Labor*, 64 F.3d 271, 279-80 (7th Cir. 1995)); *see also Harik v. Nat'l Aeronautics and Space Admin.*, No. 4:06CV56, 2006 WL 2381964, at *13 (E.D. Va. Aug. 16, 2006) (concluding that, among other things, plaintiff's disrespectful tone towards management, was a legitimate nondiscriminatory reason for plaintiff's termination); *Scott-Brown v. Cohen*, No. 00-3570, 2001 WL 34382144, at *6 (D. Md. Aug. 14, 2001) (finding an adverse employment action legitimate and nondiscriminatory where plaintiff spoke in a "loud and abusive tone" and where others overheard plaintiff's discussion).

Here, shortly after Defendant warned Plaintiff and Burns to stop badmouthing each other behind their backs, Defendant's Administrator overheard Plaintiff talking about Burns in a "loud" and "angry" tone in front of a resident. (Filing No. 50-5, Attach. 4 at CM/ECF pp. 4-5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 201-03.) Defendant discharged Plaintiff for

this conduct.[1] (Filing No. 50-5, Attach. 4 at CM/ECF p. 5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 202-04; Filing No. 50-3, Attach. 2 at CM/ECF pp. 2-4.) The court finds this proffered reason is a legitimate and nondiscriminatory reason for Ngrime's termination.

Because Defendant has produced a legitimate, nondiscriminatory reason for its decision to discharge Plaintiff, the burden shifts back to Plaintiff to demonstrate pretext. On this issue, Plaintiff can avoid summary judgment "only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was *a determinative factor* in the adverse employment decision." Carrington, 481 F.3d at 1053 (quoting Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001)). At all times, plaintiff bears the burden of demonstrating a genuine issue of fact as to whether the employer intentionally discriminated against him because of his race. Thomas v. Runyon, 108 F.3d 957, 960 (8th Cir. 1997). Plaintiff here attempts to meet this burden with two different arguments.

First, Plaintiff argues that even though he talked about Burns in front of a resident, his statements were not negative or disparaging. (Filing No. 29-3, Attach. 2 at CM/ECF pp. 201-03; Filing No. 45 at CM/ECF p. 41.) As such, Plaintiff argues that Defendant's proffered reason for his discharge "is just a good example of pretext." (Filing No. 45 at CM/ECF p. 42.) In fact, Plaintiff argues that "[n]obody believes that" saying Robin's name "even with an angry tone of voice would constitute negativity . . . [or] the putting down [of]

---

[1]The court notes that Defendant attached Plaintiff's numerous disciplinary records to its Brief in Support of its Motion for Summary Judgment. (Filing No. 29-7, Attach. 6 at CM/ECF pp. 1-19; Filing No. 29-8, Attach. 7 at CM/ECF pp. 1-2, 13-14.) However, Defendant does not argue that Ngrime was terminated due to his long-standing disciplinary issues.

9

another employee." (*Id.*) This argument is conclusory, without factual support, and provides no proof of race discrimination.

The relevant inquiry is not whether Plaintiff believes his comments were negative, but rather "whether the employer gave an honest nondiscriminatory explanation for its actions." *Thomas*, 108 F.3d at 960. Here, Burke discharged Plaintiff because she overheard him say "Robin . . . Robin" in a loud and angry tone in the presence of a resident. (Filing No. 50-5, Attach. 4 at CM/ECF pp. 4-5; Filing No. 29-3, Attach. 2 at CM/ECF pp. 201-03.) Burke states this decision "was consistent with the manner in which [she] would have handled any other similarly situated employee who had engaged in the same conduct." (Filing No. 50-3, Attach. 2 at CM/ECF p. 6.) While Plaintiff may disagree with Burke's decision, his evidence "must do more than raise doubts about the wisdom and fairness of [her] opinions and actions." *Hervey v. County of Koochiching*, 527 F.3d 711, 725 (8th Cir. 2008).

Second, Plaintiff argues that Burns is similarly situated because she also talked negatively about Plaintiff in front of a resident. (Filing No. 45 at CM/ECF pp. 42-3.) However, Plaintiff has not submitted evidence that Burns engaged in the same conduct as Plaintiff, or that Defendant knew of such conduct. Plaintiff offers nothing more than his opinion that Burns was not treated similarly. Stated another way, Plaintiff has not shown that Burns spoke negatively about him, or another co-worker, after being instructed not do so during the December 29, 2005, meeting. In order to survive summary judgment, Plaintiff must substantiate his allegations with more than "speculation, conjecture, or fantasy." *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037 (8th Cir. 2004) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)).

10

Plaintiff's conclusory allegations simply fail to rebut the legitimacy of Defendant's decision. As such, the court finds that the evidence, taken in its entirety, and viewed in a light most favorable to Plaintiff, is insufficient for a reasonable trier of fact to infer that race was a determinative factor in Defendant's decision to discharge Plaintiff.

### C. Plaintiff's Hostile Work Environment Claim

In addition to Plaintiff's discrimination claim, Plaintiff also alleges that Defendant created a hostile work environment. (Filing No. 1 at CM/ECF p. 1.) In order for Plaintiff to establish a hostile work environment claim, Plaintiff must show that: (1) he belongs to a protected group; (2) he "was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper action."[2] *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (quoting *Palesch v. Missouri Comm'n on Human Rights*, 223 F.3d 560, 566 (8th Cir. 2000)).

Here, Plaintiff alleges that he was physically "assaulted," "verbally attacked," "taunted," and "harassed incessantly" by his co-workers. (Filing No. 1 at CM/ECF pp. 7, 9, and 12; Filing No. 45 at CM/ECF pp. 12-13, 19, 46-48, 55 and 79.) Plaintiff felt this harassment was due to his race, so he complained to Defendant. (*Id*.) In February 2005, Creal, Defendant's Interim Administrator, investigated Plaintiff's claims. (Filing No. 50-4, Attach. 3 at CM/ECF pp. 1-4.) Creal interviewed a "substantial" number of employees,

---

[2]Section 1981 hostile work environment claims are analyzed under the same framework as Title VII hostile work environment claims. *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001).

11

determined that Plaintiff's claims were unsubstantiated and that Plaintiff was simply unwilling "to accept the fact that he had issues with his performance." (*Id*. at CM/ECF p. 1.)  One month later, Burke took over for Creal and Plaintiff reiterated his claims.  (Filing No. 50-3, Attach. 2 at CM/ECF p 1.)   Burke conducted another investigation and also determined that Plaintiff's claims were "unsubstantiated and without merit."  (*Id*.)

Although Plaintiff's allegations indicate that he had conflicts with his co-workers, "[n]ot all unpleasant conduct creates a hostile work environment."  *Palesch*, 233 F.3d at 567-68 (citations omitted). To survive summary judgment, "plaintiff must show that [he] was singled out because of [his race], and that the conduct was severe and pervasive."  *Id*.  Here, Plaintiff has not presented sufficient evidence to show that the harassment actually occurred.  Further, Plaintiff failed to present any evidence to create a "causal connection between the . . . harassment and [his] protected status."  *Id*. at 566.  Simply put, Plaintiff's evidence is not sufficient to create a genuine issue of material fact.

### D.    Plaintiff's Retaliation Claim

For his final claim, Plaintiff alleges that Defendant retaliated against him by providing a negative reference after Plaintiff filed a claim against Defendant with the NEOC.  (Filing No. 1 at CM/ECF p. 30-31.)  To establish a retaliation claim, Plaintiff must show (1) that he engaged in statutorily protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two events.  *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005).  For Plaintiff's negative employment reference to constitute an adverse employment action, he must show that Defendant disseminated false information "that a prospective employer would view as material to its hiring decision."  *Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006).

Plaintiff states that Moore gave a "bad report" to "Hector" at "St. Joe's."  (Filing No. 1 at CM/ECF p. 30-31; Filing No. 36 at CM/ECF pp. 9-10.)  Plaintiff believes this "bad report" kept him from receiving a job offer from St. Joe's.  (*Id.*)  But like his other claims, Plaintiff does not substantiate this allegation with sufficient evidence to show that the "bad report" actually occurred.  Further, Plaintiff has not presented any evidence to connect the "bad report" to his NEOC filing.[3]  In order to survive summary judgment, Plaintiff must do more than rely on his own testimony to raise a genuine issue of material fact as to whether Defendant retaliated against him.  *See e.g., Fischer v. AT & T Corp.*, No. 97-2456, 1998 WL 78996 *2 (7th Cir. Feb. 19, 1998) (unpublished).  In sum, Plaintiff's evidence is insufficient to avoid summary judgment.

IT IS THEREFORE ORDERED that:

1. Defendant Papillion Manor's Motion for Summary Judgment (Filing No. 27) is granted as set forth in this Memorandum and Order.  All claims against Defendant are dismissed with prejudice;

2. Defendant's Motion for Protective Order (Filing No. 41) and Plaintiff's Motion for an Order Denying Defendant's Motion for Protective Order (Filing No. 42), are denied as moot; and

3. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 12th day of February, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[3]In fact, St. Joe's previously employed Plaintiff and discharged him for failing to give privacy to a resident. (Filing No. 36 at CM/ECF p. 6-7.)  This employment history is counter to Plaintiff's argument that St. Joe's did not hire him because of Defendant's alleged "bad report."

13